414 Pa. Superior Ct. 567 (1992)
607 A.2d 1083
Louis EDMONDS, a Minor By Taneika JAMES, Mother and Natural Guardian, and Taneika James, in her own right, Appellants,
v.
The WESTERN PENNSYLVANIA HOSPITAL RADIOLOGY ASSOCIATES OF WESTERN PENNSYLVANIA P.C., Neal B. Simmons, M.D., and Harvey L. Neiman, M.D.
Louis EDMONDS, a Minor by Taneika JAMES, Mother and Natural Guardian, and Taneika James, in her own right, Appellants,
v.
Wynne COOPER, M.D.
Superior Court of Pennsylvania.
Argued January 16, 1992.
Filed April 30, 1992.
*569 Bruce S. Gelman, Pittsburgh, for appellants (at 83 and 146).
Richard Federowicz, Pittsburgh, for Western Pennsylvania Hosp., appellee (at 83).
Bernard R. Rizza, Pittsburgh, for Neiman, appellee (at 83).
Elaine S. Nace, Pittsburgh, for Cooper, appellee (at 146).
Before CAVANAUGH, WIEAND and HESTER, JJ.
HESTER, Judge:
This is a consolidated appeal from orders entered in the Court of Common Pleas of Allegheny County on November 30, 1990, and January 2, 1991. Those orders, which respectively sustained certain preliminary objections in the nature of a demurrer and granted Wynne Cooper, M.D., judgment on the pleadings, disposed of actions arising from circumstances related to the pregnancy of Taneika James and the birth of her physically impaired son, Louis Edmonds. For the reasons set forth below, we affirm.
The procedural history of the first appeal, number 00083 Pittsburgh, 1991, may be summarized as follows. On September 25, 1990, Ms. James, on behalf of herself and her son, filed a complaint against the Western Pennsylvania Hospital, Radiology Associates of Western Pennsylvania, P.C., Neal B. Simmons, M.D., and Harvey L. Neiman, M.D. *570 In that complaint, Ms. James asserted that a sonogram taken during her pregnancy revealed a fetal abnormality, alleged that she was not informed of that condition in a timely fashion, and implied that she would have sought an abortion had she been so informed. Consequently, Ms. James requested damages arising from both the pregnancy and the birth of her son. In addition, she sought damages on behalf of her son for the pain and complications associated with his impairment as well as the treatment it rendered necessary.
Shortly after initiating the action, appellants amended their complaint to clarify the relationship between the individual and institutional medical providers. Thereafter, appellees, relying upon the statutory prohibition against causes of action premised upon a claim that a person should not have been born, see 42 Pa.C.S. § 8305, filed preliminary objections in the nature of a demurrer.[1] On November 30, 1990, the trial court entered the challenged order sustaining those objections. Appellants subsequently filed a timely notice of appeal.
*571 We now turn to appeal number 00146 Pittsburgh, 1991. On January 3, 1989, appellants initiated proceedings against Wynne Cooper, M.D., by filing a praecipe for a writ of summons. Subsequently, following the reissuance of the writ and the effectuation of service, they filed a complaint which contained allegations substantially similar to those previously described. The parties then filed additional pleadings and proceeded with discovery. On September 11, 1990, after appellants requested a jury trial, Dr. Cooper moved for judgment on the pleadings contending that the causes of action asserted by appellants were barred by 42 Pa.C.S. § 8305. Four months later, the trial court entered the order granting the requested relief. Appellants filed a timely notice of appeal, and we consolidated the action with appeal number 00083 Pittsburgh, 1991, for argument and disposition.
It has long been clear that we have an obligation to consider the appropriateness of each appeal and that such consideration may be undertaken sua sponte. Gatten v. Merzi, 397 Pa.Super. 148, 579 A.2d 974 (1990) (per curiam). Moreover, we note that absent a specific statutory provision to the contrary, any appeal determined to be interlocutory must be quashed. Id. With these principles in mind, we sua sponte address the propriety of the present appeals.
Our review of the record relating to appeal number 00146 Pittsburgh, 1991, clearly establishes that it was taken from a final order and that it is properly before us for disposition. See Indiana County Hospital Authority v. McCarl's Plumbing & Heating Co., 344 Pa.Super. 226, 496 A.2d 767 (1985) (per curiam) (order granting judgment on the pleadings is a final order and therefore, appealable). With respect to the remaining appeal, we note that the order sustaining the preliminary objections of the various medical providers did not dismiss appellants' complaint or explicitly dispose of the action; however, it effectively terminated the proceedings. Therefore, we find that order also to be final and appealable. See Hudock v. Donegal Mutual Insurance Co., 438 Pa. 272, 264 A.2d 668 (1970) *572 (order which sustains preliminary objections in the nature of a demurrer without explicitly terminating the action is final and appealable if it effectively terminates action). Accordingly, we turn to the merits of the two appeals.
The standards utilized in reviewing the propriety of decisions either sustaining preliminary objections in the nature of a demurrer or entering judgment on the pleadings are well-established. With respect to the former decisions, we note:
It is axiomatic in the law of pleading that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom. Yania v. Bigan, 397 Pa. 316, 155 A.2d 343 (1959); Byers v. Ward, 368 Pa. 416, 84 A.2d 307 (1951). Conclusions of law and unjustified inferences are not admitted by the pleading. Lerman v. Rudolf, 413 Pa. 555, 198 A.2d 532 (1964). Starting from this point of reference the complaint must be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained.
Greenspan v. United Services Automobile Assn., 324 Pa.Super. 315, 318, 471 A.2d 856, 857-58 (1984), quoting Rose v. Wissinger, 294 Pa.Super. 265, 439 A.2d 1193 (1982). In connection with the latter decisions, we have indicated:
Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. Karns v. Tony Vitale Fireworks Corporation, 436 Pa. 181, 259 A.2d 687 (1969). It may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. Gallo v. J.C. Penney Casualty Insurance Co., 328 Pa.Super. 267, 476 A.2d 1322 (1984); Vogel v. Berkley, *573 354 Pa.Super. 291, 511 A.2d 878 (1986); Groff v. Pete Kingsley Building, Inc., 374 Pa.Super. 377, 543 A.2d 128 (1988). In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. DiAndrea v. Reliance Savings & Loan Association, 310 Pa.Super. 537, 456 A.2d 1066 (1983). The scope of review on appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. Keystone Automated Equipment Co. v. Reliance Insurance Co., 369 Pa.Super. 472, 535 A.2d 648 (1988).
Kosor v. Harleysville Mutual Insurance Co., 407 Pa.Super. 68, 71-72, 595 A.2d 128, 129-30 (1991). In the present cases, the various motions of appellees were premised upon the contention that appellants' claims supported no causes of action in light of 42 Pa.C .S. § 8305. Appellants' challenge to the trial courts' decisions on those motions concerns only the personal claims of Ms. James. In addition, we note that none of the parties question the fact that 42 Pa.C.S. § 8305 extinguished a previously recognized cause of action for wrongful birth or contend that its provisions are inapplicable to Ms. James's claims. Accordingly, resolution of the question of the propriety of the two contested orders hinges upon a determination as to the constitutionality of 42 Pa.C.S. § 8305.
Appellants assert that 42 Pa.C.S. § 8305, by extinguishing causes of action for wrongful birth, interferes with a woman's abortion right by allowing a physician to both intentionally misrepresent and negligently fail to impart information impacting upon such a decision. Accordingly, they contend that 42 Pa.C.S. § 8305 impinges upon abortion rights and violates both the due process and equal protection clauses of the fourteenth amendment of the United States Constitution.[2] This issue, which is one of first impression,[3] *574 is devoid of merit.[4]
Preliminarily, we note that legislative enactments, such as the challenged statutory provision, enjoy a strong presumption of constitutionality. Dranzo v. Winterhalter, 395 Pa.Super. 578, 577 A.2d 1349 (1990). Consequently, all doubts relating to the constitutionality of such an enactment must be resolved in its favor. Id. Thus, it is clear that a party raising a constitutional challenge has a heavy burden of rebutting the presumption of constitutionality and demonstrating that the statute clearly, plainly, and palpably violates constitutional precepts. Id. Utilizing these principles, we must examine the contested provision *575 and determine whether either the due process or equal protection clauses of the fourteenth amendment render it unconstitutional.
In pertinent part, 42 Pa.C.S. § 8305 (footnotes omitted) states:
(a) Wrongful birth.  There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born. Nothing contained in this subsection shall be construed to prohibit any cause of action or award of damages for the wrongful death of a woman, or on account of physical injury suffered by a woman or child, as a result of an attempted abortion. Nothing contained in this subsection shall be construed to provide a defense against any proceeding charging a health care practitioner with intentional misrepresentation under the act of October 5, 1978 (P.L. 1109, No. 261), known as the Osteopathic Medical Practice Act, the act of December 20, 1985 (P.L. 457, No. 112), known as the Medical Practice Act of 1985, or any other act regulating the professional practices of health care practitioners.
It long has been clear that in order to establish a fourteenth amendment violation, a litigant must demonstrate state action or involvement in connection with the matter at issue. See Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Furthermore, a state normally may be held responsible for private conduct only when it has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [s]tate." Blum v. Yaretsky, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534, 546 (1982). As mentioned previously, appellants assert that the statutory provision at issue impinges upon a woman's right to obtain an abortion, a right that with some qualifications was recognized by the United States Supreme Court in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). However, our review of the *576 clear language contained within that provision reveals that it neither regulates nor directly affects such rights. Instead, that language merely extinguishes all causes of action arising from a claim that but for the improper conduct of a medical provider, a child would have been aborted prior to birth. Thus, resolution of the state action issue rests upon the determination of whether 42 Pa.C.S. § 8305(a) encourages medical providers to infringe upon the abortion rights of their patients.
The Osteopathic Medical Practice Act, 63 P.S. § 271.1 et seq., and the Medical Practice Act of 1985, 63 P.S. § 422.1 et seq., respectively create the State Board of Osteopathic Medicine and the State Board of Medicine. In addition, they establish licensing procedures for various medical professionals, including physicians, and provide that licenses may be refused, revoked, or suspended for certain enumerated reasons. According to the two acts, physicians may be disciplined by the appropriate boards for making intentional misrepresentations in connection with patient care. See 63 P.S. §§ 271.15(a)(2) and 422.41(2). Thus, if a physician intentionally misrepresented to a woman the state of her health or that of her fetus in an effort to infringe upon her abortion rights, he could be disciplined by the appropriate licensing authority. Since 42 Pa.C.S. § 8305(a) specifically indicates that it provides no defense to a disciplinary proceeding involving such misrepresentations, it clearly does not encourage physicians to make them. Consequently, we turn to the question of whether the challenged provision encourages negligent behavior on the part of physicians with respect to the impartation of information affecting abortion decisions.
Although the provisions of 42 Pa.C.S. § 8305(a) clearly relieve physicians from liability for negligently failing to provide women with information affecting abortion decisions, we would be engaging in speculation were we to assume that this extinguishment of liability encourages such improper behavior. Thus, it is clear that the issue of the challenged provision's effect is open to question. Since *577 all doubts relating to the constitutionality of a statutory provision must be resolved in its favor, see Dranzo v. Winterhalter, supra, we must presume that 42 Pa.C.S. § 8305(a) does not encourage physicians to engage in the negligent conduct at issue.
As demonstrated above, 42 Pa.C.S. § 8305(a) does not encourage either intentional misrepresentations or the negligent impartation of information relating to abortion rights. Consequently, that provision does not amount to state action affecting such rights, and appellants' fourteenth amendment claims must fail.[5] Since 42 Pa.C.S. § 8305 is constitutional, the trial courts properly could have relied upon it to dismiss Ms. James's claims as not supporting a cause of action.[6]
Orders affirmed.
WIEAND, J., files a concurring opinion.
WIEAND, Judge, concurring:
I concur in the result. In my judgment, 42 Pa.C.S. § 8305 is rationally designed to meet a legitimate state interest and, therefore, is constitutional. In this respect, I would adopt the reasoning of the Honorable David S. Cercone *578 who, in entering judgment on the pleadings in favor of the physician-defendant, wrote as follows:
"We believe that our legislature unquestionably had a rational basis for enacting section 8305. Senator Rocks provided the following viewpoint during debate on this legislation:
`this is the intent of what the wrongful birth and wrongful life legislation is about to stop a court engendered policy which views the birth of a child, be that child handicapped or otherwise, as a damaging event for which someone should be punished in order to prevent this quality of life ethic from becoming so pervasive that a handicapped child is routinely considered better off dead and of less value than what we would call a `normal child' and to prevent the practice of medicine especially obstetrics and gynecology, from becoming coerced into accepting eugenic abortion as a condition for avoiding what are particularly wrongful birth lawsuits.' Pa. Senate leg. 1961 (March 22, 1988).
Other proffered rationale for this statute are also persuasive. The legislature believed that it would be improper to view any birth as an evil or wrong, and thus a cause of action. Secondly, our society has become increasingly aware and protective of the rights of the handicapped. To recognize the validity of a wrongful life statute would be to make the handicapped a lower class of citizen. Third, the recognition of these type causes of action by the legislature would, in essence, have dictated to the medical profession how to practice in the area of obstetrics. Finally, a recognition of these causes of action would have caused ever increasing malpractice insurance rates to increase exponentially, with a resulting loss of adequate medical care in this vital area. See Pa.House Leg. 2306 (February 24, 1988).
We believe that section 8305 has a rational basis designed to meet a legitimate state interest. The legislature has not opted to make physicians exempt for their wrongdoings. Rather, the legislature has validly freed physicians from *579 liability for defects or handicaps for which the physician is in no way responsible.
We are persuaded by the arguments of Justice Nix in the Speck v. Finegold, 497 Pa. 77, 439 A.2d 110 decision. See 497 Pa. at 92-99, 439 A.2d at 118, 120-21. We agree with Justice Nix that `. . . any intimation that a recognition is required of these proffered causes of action because of constitutional mandate is completely without foundation.' 497 Pa. at 96, 439 A.2d at 120. `. . . [T]here can be no question that refusal to create new tort liability does not constitute governmental interference with the constitutionally protected access to abortion.' 497 Pa. at 97, 439 A.2d at 120.
We believe that the refusal of our legislature to recognize a cause of action for wrongful birth and wrongful life `does not impede the decision of the parents' regarding procreation, nor does it impede a woman's right to choose to have an abortion. See Speck, 497 Pa. at 99, 439 A.2d at 121."
NOTES
[1] 42 Pa.C.S. § 8305 (footnotes omitted) states:

§ 8305. Actions for wrongful birth and wrongful life
(a) Wrongful birth.  There shall be no cause of action or award of damages on behalf of any person based on a claim that, but for an act or omission of the defendant, a person once conceived would not or should not have been born. Nothing contained in this subsection shall be construed to prohibit any cause of action or award of damages for the wrongful death of a woman, or on account of physical injury suffered by a woman or a child, as a result of an attempted abortion. Nothing contained in this subsection shall be construed to provide a defense against any proceeding charging a health care practitioner with intentional misrepresentation under the act of October 5, 1978 (P.L. 1109, No. 261), known as the Osteopathic Medical Practice Act, the act of December 20, 1985 (P.L. 457, No. 112), known as the Medical Practice Act of 1985, or any other act regulating the professional practices of health care practitioners.
(b) Wrongful life.  There shall be no cause of action on behalf of any person based on a claim that, but for an act or omission of the defendant, the person would not have been conceived or, once conceived, would or should have been aborted.
(c) Conception.  A person shall be deemed to be conceived at the moment of fertilization.
[2] Our review of the record reveals that appellant, in substantial conformity with the dictates of Pa.R.C.P. 235 and Pa.R.A.P. 521, provided the Attorney General's Office with notice of its constitutional challenge at both this level and the trial level. To date, the Attorney General has not expressed a willingness to intervene in the proceedings.
[3] We note that amici curiae challenged the constitutionality of both the substantive provisions of 42 Pa.C.S. § 8305 and its retroactive application in Butler v. Rolling Hill Hospital, 382 Pa.Super. 330, 555 A.2d 205 (1989). However, as we determined that they failed to provide the Attorney General's Office with the appropriate notification, we declined to address those issues.

Two years after Butler was decided, we considered similar challenges in Jenkins v. Hospital of the Medical College of Pennsylvania, 401 Pa.Super. 604, 585 A.2d 1091 (1991) (en banc). In that case, we concluded that retroactive application of 42 Pa.C.S. § 8305(a) to bar a cause of action that accrued four years prior to its enactment was unconstitutional. Accordingly, we reversed an order striking certain provisions of a complaint. In light of this disposition, we did not address any of the substantive challenges.
[4] Appellees Harvey L. Neiman, M.D., and Radiology Associates of Western Pennsylvania, P.C., assert that appellants' constitutional challenge is moot. In support of this assertion, they point out that appellants admitted in the complaint that Louis's average gestational age was over twenty-five weeks at the time that the alleged failure to notify occurred, see Reproduced Record ("R.R.") at 78a, and that physicians are prohibited by 18 Pa.C.S. § 3211(a) from performing abortions on fetuses with a gestational age over twenty-four weeks. However, we note that 18 Pa.C.S. § 3211(a) is a criminal provision that became effective in January, 1990, over two years after the relevant events occurred. See R.R. at 77a. Furthermore, the provision's retroactive application would render it an ex post facto law in violation of article 1 section 10 of the United States Constitution. Accordingly, as we find that 18 Pa.C.S. § 3211(a) could not have affected Ms. James's ability to obtain an abortion at the relevant time, it is clear that the mootness claim is devoid of merit.
[5] We note that our decision in this regard is consistent with one reached by the Supreme Court of Minnesota in connection with a statutory provision which indicated that no person may pursue a cause of action premised upon a claim that a child would have been aborted absent the acts or omissions of another. In Hickman v. Group Health Plan, 396 N.W.2d 10 (Minn.1986), that court, citing Shelley v. Kraemer, supra, determined that the provision in question did not directly affect the right of a woman to obtain an abortion. Consequently, it concluded that the plaintiffs had established no state action relating to that matter.
[6] We uphold the statutory bar relating to the maintenance of causes of action premised upon assertions that but for the improper acts of another a child would not have been born. However, our decision does not impact upon the right of a mother to recover under ordinary malpractice principles for treatment rendered her by a medical provider during the period of gestation. Appellants clearly indicated in their complaints that these actions were premised upon the former theory and they do not challenge the applicability of the provisions contained in 42 Pa.C.S. § 8305.