**UNITED SERVICES AUTOMOBILE ASSOCIATION, a Reciprocal Inter–Insurance Exchange, an Unincorporated Association, Appellant,**

v.

**Randall SHEARS, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 4, 1996.

Filed March 17, 1997.

---

**162**

William R. Tighe, Jr., Pittsburgh, for appellant.

Donald I. Shrager, Pittsburgh, for appellee.

Before CAVANAUGH, J., CIRILLO, President Judge Emeritus, and TAMILIA, KELLY, JOHNSON, FORD ELLIOTT, SAYLOR, EAKIN and SCHILLER, JJ.

EAKIN, Judge:

United Services Automobile Association ("USAA") appeals from the order entered by the Allegheny County Court of Common Pleas on April 24, 1995. We reverse.

On February 22, 1990, Virginia resident Robert Balog's 1989 Oldsmobile was stolen in Pittsburgh. Mr. Balog was a Virginia resident and the car was registered in Virginia, insured under a policy purchased from USAA and issued under the laws of Virginia. On February 23, 1990, appellee Randall Shears, Jr. was struck by the car. His injuries were severe and resulted in the amputation of his leg.

Appellee did not own a car, nor was he an insured under any other auto policy. He was eligible under the Assigned Claims Plan of Title 75,[1] but the maximum amount of benefits available thereunder was inadequate to fully compensate him for the loss of his leg.[2] Consequently, appellee turned to USAA, the insurer of the vehicle, to provide uninsured motorist benefits. However, under the policy issued in Virginia and in compliance with Virginia law, appellee was not an insured for purposes of uninsured motorist benefits.

USAA then filed a declaratory judgment action in Allegheny County, arguing it had no liability, contractual or otherwise, because appellee was not an insured person under the policy, and the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL") did not require non-residents to maintain coverage for uninsured motorist benefits when operating a vehicle in Pennsylvania. After appellee filed his answer, both parties moved for judgment on the pleadings.

The Honorable Maurice Louik did not rule on appellee's motion, but denied USAA's motion, announcing that USAA had a duty to provide coverage under its policy co-extensive with Pennsylvania law, and that the breach of USAA's duty to provide this coverage was a tort. The order denying USAA's motion for judgment on the pleadings was interlocutory, and the holding that recognized a new tort was not appealable. Thereafter, appellee filed a motion to compel arbitration of his uninsured motorist claim. The motion was assigned to the Honorable Robert Horgos. Judge Horgos ordered the matter be submitted to arbitration, and it is this order from which USAA appeals.

■ Although USAA presents five issues for our review, there are in essence only two: whether the order compelling arbitration is appealable, and whether the order is correct.

Pennsylvania Rule of Appellate Procedure 313 provides as follows:

> (a) An appeal may be taken as of right from a collateral order of an administrative agency or lower court.

> (b) A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313; *see Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978).

---

1. 75 Pa.C.S. §§ 1751–1757; Act of February 12, 1984, P.L. 26, No. 11, § 3.

2. Under 75 Pa.C.S. § 1754 of the Assigned Claims Plan, the maximum benefit available to appellee was $15,000, which included the $5,000 maximum medical benefit.

Judge Horgos ruled that the matter be submitted to arbitration in accordance with the rules provided by the American Arbitration Association. USAA correctly points out that since the rules of the American Arbitration Association do not provide for a right of appeal, submitting to arbitration would have the effect of putting USAA out of court on the declaratory judgment action.

Rule 313 clearly makes the ruling appealable even though it is interlocutory. Without question, the order to compel arbitration is collateral to the main cause of action—the declaratory judgment action, which technically is still open since no final judgment was entered. Clearly, the question of whether a court may order an out-of-state insurer to submit to arbitration on a newly-created tort is an important one. Finally, going forward with the arbitration will result in the loss of appellate review, which means that USAA's claim under the declaratory judgment action will be irreparably lost. Therefore, we find the order compelling arbitration is appealable.

■ The next question is whether the trial court was correct in requiring USAA to submit to arbitration. USAA issued a policy that contains no arbitration clause for uninsured motorist claims and does not define an uninsured pedestrian as an uninsured motorist. In accordance with Virginia law, appellee is not covered under the policy issued by USAA.[3]

■ In its order compelling arbitration, the trial court stated it was bound by the opinion of Judge Louik, who determined that, while USAA had no contractual obligation to appellee, a cause of action "sounding in tort" existed under the theory that USAA had a duty beyond the contractual one, which it had breached. Judge Louik stated that a Pennsylvania policy written pursuant to the MVFRL would extend coverage to a pedestrian like appellee and that, therefore, an insurer would have a contractual duty to provide benefits to him. He continued:

> However, the question is whether the statute creates a cause of action in tort. That is, does the statute supercede the terms of a validly executed policy for insurance? Certainly the statute governs the underwriting of a policy. Does the statute, however, impose post-liability where, as here, the policy is a valid foreign policy yet the statute requires the meeting of an additional burden?

> The Court can certainly impose [an] additional burden on an insurer when the public policy of its jurisdiction dictates so. Therein lies the importance of the MVFRL. For whether the statute requires the extension of uninsured motorist benefits is not the key factor here. Rather, the presence of the statute and its requirements indicates public policy. It is most evident that the drafters of the statute sought to protect the pedestrians walking on their streets. This Court, then, must afford that same protection to its citizens. While a Court cannot create a contractual burden, the Court can, and must, uphold strong public policy evidenced by statute by creating a common law cause of action sounding in tort.

(Trial Court Opinion, Louik, J., 1/28/94, at 3).

The crux of this position is that although USAA's policy is contractually sound and legally valid both here and in Virginia, public policy dictates that out-of-state insurers who insure out-of-state drivers driving out-of-state-registered vehicles into Pennsylvania have a duty to provide the same types of protection to Pennsylvania residents as the MVFRL dictates. Accordingly, if out-of-state insurers breach this duty, they are subject to a cause of action in tort. We disagree.

All agree that USAA's policy was valid under Virginia law and, as appellee was not

---

3. The Virginia Insurance Code requires that uninsured motorist provisions be included in any motor vehicle insurance policy issued or delivered in Virginia, and defines "insured" as

> [t]he named insured, and while resident of the same household, the spouse of the named insured, and relatives of either, while in a motor vehicle or otherwise, and any person who uses the motor vehicle to which the policy applies, with the express or implied consent of the named insured, and a guest in the motor vehicle to which the policy applies or the personal representative of any of the above.

Va.Code Ann. § 38.2–2206.

an insured under that policy, USAA owed no contractual duty to him. All agree that the policy does not provide for arbitration on an uninsured motorist claim. Since there is no contractual duty owed to appellee, his claim may only properly go to arbitration if there is some reason to extend the provisions of the MVRFL to this appellee. The trial court found a reason—public policy—and created a tort. It then used this tort to send appellee's claim to arbitration.

Appellee contends that the out-of-state endorsement contained in the policy issued by USAA entitles him to uninsured motorist coverage. The endorsement provides:

> If, under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a nonresident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, the limits of the company's liability and the kinds of coverage afforded by the policy shall be as set forth in such law, in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss.

Appellee's reliance on this provision is misplaced. Nowhere in the MVFRL is there any provision requiring a non-resident to have greater uninsured motorist benefits on his vehicle when he comes into the Commonwealth, nor is there any MVFRL provision requiring a non-resident to conform to the uninsured motorist provisions of the Commonwealth. *Insurance Co. of Pennsylvania v. Hampton,* 441 Pa.Super. 382, 657 A.2d 976, *alloc. denied,* 542 Pa. 647, 666 A.2d 1056 (1995).

Appellee contends that the MVFRL demands that uninsured pedestrians be considered insured for purposes of the Assigned Claims Act. This too is misplaced.

A recent decision of this court offers guidance. In *Frazier v. State Farm Mutual Ins. Co.,* 445 Pa.Super. 218, 665 A.2d 1 (1995), this court held that Frazier, an uninsured pedestrian who was struck by a stolen vehicle, was not eligible for uninsured motorist benefits from the owner's insurer. State Farm had contended that Frazier did not meet the definition of a person eligible to receive those benefits under the policy. However, an arbitration hearing found for Frazier on her claim for benefits, and a non-jury trial followed. The trial court upheld the arbitration finding and opined that even though the plain language of the policy precluded Frazier from receiving benefits, the court nonetheless felt mandated to award her benefits, based on our holding in *Ector v. Motorists Ins. Cos.,* 391 Pa.Super. 458, 571 A.2d 457 (1990).

Ector was an uninsured pedestrian who was struck by an insured vehicle that had been stolen by an uninsured driver. The insurer denied Ector's claims for uninsured motorists benefits. On appeal, this court agreed with Ector that *Prudential Property and Casualty Ins. Co. v. Falligan,* 335 Pa.Super. 195, 484 A.2d 88 (1984) was controlling and entitled him to benefits. In *Falligan,* we upheld the recovery of uninsured motorist benefits by an uninsured pedestrian who was injured by an insured auto driven by the insured's son without permission. *Falligan,* however, was decided at a time when automobile insurance policies issued in Pennsylvania were governed by the No–Fault Act, since repealed and replaced by the MVFRL. The *Falligan* court relied on the articulated purpose of the No–Fault Act to provide "maximum feasible restoration," which required insurers to provide uninsured motorist benefits to uninsured injured persons.

In following *Falligan,* the *Ector* court noted that the MVFRL did not contain any language analogous to the "maximum feasible restoration" language found in the No–Fault Act. Nevertheless, the court felt that the MVFRL should be liberally construed

because of its status as a remedial financial responsibility act, and found the MVFRL "sufficiently analogous to require this court to follow our decision in *Falligan.*" *Ector,* 391 Pa.Super. at 466, 571 A.2d at 461.

In *Frazier,* however, we noted that an *en banc* panel of this court had limited *Ector*'s scope, holding that the "maximum feasible restoration" principle no longer exists in Pennsylvania law. In *Jeffrey v. Erie Ins. Exchange,* 423 Pa.Super. 483, 621 A.2d 635 (1993) *(en banc ), alloc. denied,* 537 Pa. 651, 644 A.2d 736 (1994), we disagreed "with any implication in *Ector* that our responsibility to 'liberally construe' the ... MVFRL is as broad a judicial mandate to effectuate coverage as was the 'maximum feasible restoration' principle in the now defunct No–Fault Act." *Frazier,* 445 Pa.Super. at 221, 665 A.2d at 3 (quoting *Jeffrey,* 423 Pa.Super. at 495 n. 5, 621 A.2d at 641 n. 5). In reversing the trial court in *Frazier,* we held that since the language of the policy in *Frazier* made it clear that Frazier did not fit the eligibility criteria for recovery of uninsured motorist benefits, she could not overcome that deficiency by relying on outdated theory.

The policy at issue in *Frazier* was issued under the laws of Pennsylvania on a car registered in Pennsylvania and involved in an accident in Pennsylvania. The clear language of the policy precluded Frazier from receiving uninsured motorist benefits, and this court declined to allow her to recover. In the instant case, equally clear language of a policy issued under the laws of Virginia on a car registered in Virginia that was involved in an accident in Pennsylvania precludes an uninsured pedestrian from receiving uninsured motorist benefits. While appellee would like us to ignore *Frazier* and find otherwise, we decline to do so. *See Pempkowski v. State Farm Mutual Auto. Ins. Co.,* 451 Pa.Super. 61, 678 A.2d 398 (1996) (applying and following *Frazier ).*

■ There is absolutely no basis upon which USAA may be required to submit to arbitration on the policy it issued; the plain language of the policy does not include appellee in its definition of an insured motorist.[4] Under applicable precedent, when the plain language of a policy does not define an uninsured pedestrian as an individual eligible for uninsured motorist benefits, such pedestrian is not covered. *See Frazier, supra.*

The only way appellee could arbitrate his claim was if the court created a cause of action for him. The trial court obliged. We, however, decline to recognize the trial court's ill-defined cause of action, however well-intentioned. While the trial court imposed upon USAA a duty to define an uninsured pedestrian as an insured for purposes of the MVFRL, no such duty exists either statutorily or at common law. The policy issued by USAA contained provisions for uninsured motorists in compliance with the laws of Virginia and Pennsylvania. USAA has no further obligation to provide uninsured motorist coverage to appellee, and, therefore, USAA is not required to submit this claim to arbitration. Accordingly, we reverse the order of the trial court.

Order reversed.

FORD ELLIOTT, J., dissents.

FORD ELLIOTT, Judge, dissenting:

Because I find that the order appealed from, compelling arbitration in accordance with the rules of the American Arbitration Association, is interlocutory in nature, and that United Services Automobile Association (USAA) has failed to comply with the Rules of Appellate Procedure for perfecting an appeal from an interlocutory order, I must respectfully dissent.

This court has repeatedly held that an appeal from an order compelling arbitration is not a final order. *See State Farm Fire and Casualty Co. v. Craley,* 450 Pa.Super. 205, 207, 675 A.2d 732, 734 (1996) (an order denying insurer's declaratory judgment action, sustaining insured's preliminary objections, and compelling arbitration is not final; rather, it is interlocutory because the parties are forced into, not out of, court). *See also*

---

**4.** The policy's language nevertheless complies with Pennsylvania law because it covers a pedestrian, provided he or she is a named insured, or a spouse or resident-relative of either the named insured or a spouse of the named insured.

*Maleski v. The Mutual Fire, Marine and Inland Insurance Co.*, 534 Pa. 575, 580–81, 633 A.2d 1143, 1146 (1993) (pursuant to 42 Pa.C.S. § 7320(a)(1) [Uniform Arbitration Act], a party may take an appeal from a court order denying an application to compel arbitration; however, there is no corresponding statutory authority in existence that allows a party to take an appeal from an order that compels arbitration); *Gardner v. Prudential Insurance Co.*, 332 Pa.Super. 358, 359, 481 A.2d 654, 655 (1984) (no statutory authority exists for review of an order which compels arbitration); *Brennan v. General Accident Fire and Life Assurance Corp., Ltd.*, 307 Pa.Super. 288, 290, 453 A.2d 356, 357 (1982) (order directing common law arbitration [42 Pa.C.S. § 7341] was not an appealable order).[1] The order at issue instantly is therefore not an appeal from a final order, pursuant to Pa.R.A.P. 341.[2] With this proposition the majority agrees. (Majority opinion at 3.)

Without citation to authority, however, USAA argues, and the majority agrees, that there is no right of appeal from an arbitration award under the rules of the American Arbitration Association. (USAA's brief at 8–9; majority opinion at 3.) Hence, USAA argues that the order compelling arbitration is final. (USAA's brief at 10.) Nevertheless, my own research reveals that it has long been the law of Pennsylvania that arbitration pursuant to the rules of the American Arbi-

tration Association is governed by the common law of arbitration. *Zook v. Allstate Insurance Co.*, 349 Pa.Super. 328, 334–35, 503 A.2d 24, 27 (1986); *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 459–60, 383 A.2d 189, 191 (1978); *Press v. Maryland Casualty Co.*, 227 Pa.Super. 537, 539–40, 324 A.2d 403, 404 (1974). In *Brennan, supra,* the court set forth the scope of review of common law arbitration, noting that "[j]udicial review of common law arbitration is very narrow. A court may not vacate or modify an award 'unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.'" *Brennan, supra* at 291, 453 A.2d at 357, *quoting* 42 Pa.C.S.A. § 7341.

Another panel of this court noted that "'Irregularity' refers not to the award itself, but to the process used in arriving at the award." *Hade v. Nationwide Insurance Co.*, 349 Pa.Super. 541, 546, 503 A.2d 980, 983 (1986), *affirmed,* 519 Pa. 227, 546 A.2d 615 (1988), *overruled on other grounds, Ostroff v. Keystone Insurance Co.*, 357 Pa.Super. 109, 515 A.2d 584 (1986) (*en banc*). As the *Hade* court further observed, "Admittedly, a finding that the panel [of arbitrators] considered an issue beyond the scope of the arbitration clause would support a modification of the award on appeal." *Hade, supra* at 546, 503

---

**1.** I agree with the *Gardner* court's observation that the *Brennan* court misread 42 Pa.C.S.A. § 7320 when it stated in dictum that an appeal may be taken from an order compelling statutory arbitration pursuant to 42 Pa.C.S.A. § 7320.

I also note that § 7320, relating to the appealability of court orders, was made applicable to common law arbitration by *statute* in 1982, except for subsection (a)(4), relating to the appealability of a court order modifying or correcting an award. *See* 42 Pa.C.S.A. § 7342. As a result, statutory authority now exists to appeal from a court order *denying* an application to compel common law arbitration, but not from a court order *granting* such an application to compel. *See* 42 Pa.C.S.A. § 7320(a)(1).

**2.** I find USAA's reliance on *Cunningham v. Prudential Property & Casualty Insurance Co.*, 340 Pa.Super. 130, 489 A.2d 875 (1985), misplaced. It is true that the order appealed from in *Cunningham* compelled arbitration. Nevertheless, the order also sustained Prudential's demurrer to

the Cunninghams' complaint in assumpsit, in which the Cunninghams alleged that they were entitled to be compensated for their personal injuries because the insurer breached the contract of insurance when it failed to appoint an arbitrator pursuant to a clause in the insurance policy mandating statutory arbitration of disputes. Because the Cunninghams were "out of court" on their action in assumpsit, which was distinct from a determination of their entitlement to benefits under the policy, this court held that the order was final, hence appealable.

Instantly, however, the declaratory judgment action brought by USAA merely *seeks to* determine whether it is liable for uninsured motorist benefits under the terms of the policy, as construed in relation to applicable state law; no independent cause of action is alleged. Hence, USAA is not "out of court" instantly on an independent cause of action. In fact, based upon Judge Louik's order, discussed *infra,* USAA now appears to be "in court" on an additional, tort, theory.

A.2d at 983. The basis for this conclusion was the *Hade* court's observation that "in the face of the rule giving common law arbitrators unfettered discretion, it has been explicitly held that whether a given dispute is within the terms of an arbitration agreement is for the court to determine, provided this issue is not intertwined with the merits of the claim." *Id.* A recent panel of this court followed *Hade*, holding that "if a common law arbitration panel exceeds the scope of the arbitration agreement, the award can be modified on this basis." *Ginther v. United States Fidelity and Guaranty Co.,* 429 Pa.Super. 255, 260, 632 A.2d 333, 335 (1993), *allocatur denied,* 538 Pa. 612, 645 A.2d 1316 (1994).

USAA instantly may therefore be able to challenge the arbitrators' jurisdiction after an award is entered, on the basis that there was *no* arbitration agreement, hence no "scope" at all. As the *Brennan* court observed:

> Although a party such as appellant may in some sense be out of court, that is true only temporarily. The controversy is not concluded, and we see no compelling need for immediate appellate review. If the arbitration is permitted to proceed, the party initially objecting to arbitration may win. The party would then no longer be aggrieved and no appeal would be required. At worst, the party will have been required to participate in an unnecessary arbitration, but that is no different than the situation where a party is required to go to trial after a court erroneously refuses to sustain a demurrer to a complaint.

*Id.* at 292–93, 453 A.2d at 358.

I recognize that the trial court's order compelling arbitration was erroneous as a matter of law, relying as it did upon 31 Pa.Code 63.2(8). *See McFarley v. American Independent Insurance Co.,* 444 Pa.Super. 191, 192–95, 663 A.2d 738, 739–40 (1995) (holding that arbitration is a matter of contract, and absent an agreement between the parties to arbitrate a particular issue, the parties cannot be compelled to arbitrate that issue; further holding that in the absence of a statutory requirement, arbitration may not be required by regulation, and citing specifically 31 Pa.Code 63.2(8)). *See also Hiller v. Allstate Insurance Co.,* 300 Pa.Super. 149, n. 1, 446 A.2d 273, 274 n. 1 (1982) (statute that requires uninsured motorist coverage does not require arbitration, and court has held that in the absence of a statutory requirement, arbitration may not be required by regulation, such as 31 Pa.Code § 63.2), *citing Ellison v. Safeguard Mutual Insurance Co.,* 209 Pa.Super. 492, 229 A.2d 482 (1967). Nevertheless, we cannot confer jurisdiction upon ourselves in order to redress any such error.

The order from which USAA takes its appeal is interlocutory. *See* cases cited *supra. See also* majority opinion at 162. "Under Pennsylvania law, an appeal may be taken from an interlocutory order as of right (Pa.R.A.P. 311), by permission (Pa.R.A.P. 313, 1301 *et seq.*), or from a collateral order (Pa.R.A.P. 313)." *Miller v. Steinbach,* 452 Pa.Super. 194, 681 A.2d 775, 777 (1996). Rule 311 lists those instances in which an appeal may be taken as of right, specifically noting that appeals from orders enumerated at 42 Pa.C.S.A. § 7320 (including orders denying an application to compel arbitration) are not suspended by the Rule. Pa.R.A.P. 311, Note, ¶ (a)(7), 42 Pa.C.S.A.[3] Appeals from orders compelling arbitration are neither listed nor noted, however. As a result, I conclude that USAA's appeal from the order compelling arbitration is not an interlocutory appeal as of right.

" 'An interlocutory appeal may be taken by permission pursuant to Chapter 13 of the Rules of Appellate Procedure.' " *Miller, supra* at 198, 681 A.2d at 777, *quoting Patton v. Hanover Insurance Co.,* 417 Pa.Super. 351, 352–54, 612 A.2d 517, 518 (1992), and *citing* Pa.R.A.P. 312; Pa.R.A.P. 1301 *et seq.* To invoke Rule 312, the trial court must certify that the order at issue "involves a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate

---

3. Rule 311 was amended April 10, 1996, effective April 27, 1996. Because the instant order was entered April 24, 1995, however, the amendments are not applicable to this appeal. Nothing in the amendments would alter the outcome, however.

termination of the matter...." *Continental Bank v. Andrew Building Co.,* 436 Pa.Super. 559, 568, 648 A.2d 551, 555 (1994), *quoting* 42 Pa.C.S.A. § 702(b); Pa.R.A.P. 312, 1311. Instantly, either Judge Louik's or Judge Horgos' order would have been certifiable under these criteria. Next, a prospective appellant must petition this court for permission to appeal within 30 days of the certified order. 42 Pa.R.A.P. 1311(b), 42 Pa.C.S.A. Certification by the trial court that the issue is appealable and the filing of a petition for permission to appeal are both jurisdictional prerequisites to taking an appeal from an interlocutory order that is not appealable as of right. *Hoover v. Welsh,* 419 Pa.Super. 102, 104–07, 615 A.2d 45, 46 (1992), *allocatur denied,* 535 Pa. 659, 634 A.2d 222 (1993). Here, however, USAA "has failed to invoke the procedure outlined in Chapter 13. Consequently, the order is not appealable by permission under the provisions of Chapter 13." *Miller, supra* at 198, 681 A.2d at 777. *See also Wilson v. Keystone Insurance Co.,* 289 Pa.Super. 101, 102–04, 432 A.2d 1071, 1072 (1981) (appeal was interlocutory where it was from an order dismissing Keystone's petition to vacate an order compelling Keystone to appoint an arbitrator pursuant to terms of insurance contract; because the appeal was not interlocutory as of right, and because Keystone had failed to invoke the procedure outlined in Chapter 13 for seeking permission to take an interlocutory appeal, the appeal must be quashed).

Finally, I must disagree with the majority, which found that USAA's appeal is an appeal from a collateral order, pursuant to Pa. R.A.P. 313. A collateral order has been defined as an order "separable from and collateral to the main cause of action ..." *Continental Bank, supra* at 567, 648 A.2d at 555, *quoting* Pa.R.A.P. 313(b). This court recently had occasion to discuss the collateral order doctrine in *Hanson v. Federal Signal Corporation,* 451 Pa.Super. 260, 265–67, 679 A.2d 785, 788 (1996). As the *Hanson* court observed:

> The collateral order doctrine is essentially an exception to the final judgment rule. The doctrine emerged in *Cohen v. Beneficial Industrial Loan Corporation,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528[] (1949), and was adopted by the Pennsylvania Supreme Court in *Bell [v. Beneficial Consumer Discount Co.,* 465 Pa. 225, 348 A.2d 734 (1975)].* In *Pugar v. Greco,* 483 Pa. 68, 394 A.2d 542 (1978), our supreme court stated:

>> In *Cohen,* the Supreme Court of the United States carved out an exception to the final judgment rule for situations where postponement of appeal until after final judgment might result in irreparable loss of the right asserted.... We applied *Cohen* in *Bell v. Beneficial Consumer Discount Company,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975), where we said:

>>> Whether an order is final and appealable cannot necessarily be ascertained from the face of a decree alone, nor simply from the technical effect of the adjudication. The finality of an order is a judicial conclusion which can be reached only after an examination of its ramifications.

*Hanson, supra* at 787–88, *quoting Pugar, supra* at 73, 394 A.2d at 545, *quoting Bell, supra.*

As the *Pugar* court noted:

> Under *Cohen,* an order is considered final and appealable if (1) it is separable from and collateral to the main cause of action; (2) the right involved is too important to be denied review; and (3) the question presented is such that if review is postponed until final judgment in the case, the claimed right will be irreparably lost.

*Pugar, supra* at 73, 394 A.2d at 545, *citing Cohen, supra,* 337 U.S. at 546, 69 S.Ct. at 1225. "However, to qualify under the *Cohen* exception all three factors must be met." *Fried v. Fried,* 509 Pa. 89, 95, 501 A.2d 211, 214 (1985). As our sister court has observed:

> The requirements that must be satisfied to permit an appeal under the collateral order doctrine are stringent and must be narrowly construed. Narrow construction of the collateral order doctrine is required to protect the integrity of the fundamental legal principle that only final orders may be appealed. To hold otherwise would al-

low the collateral order doctrine to swallow up the final order rule...

*Watson v. City of Philadelphia,* 665 A.2d 1315, 1317 (Pa.Cmwlth.1995).[4]

The majority concludes that "without question," the order to compel arbitration at issue instantly is collateral to the main cause of action—the declaratory judgment action. (Majority opinion at 162.) It then finds that the question of whether a court may order an out-of-state insurer to submit to arbitration on a newly created tort is an important one, and that going forward with the arbitration will result in a loss of appellate review. (*Id.* at 162–163.) While I agree that the issue is important, I would not find that appellate review will, even under the narrow scope permitted by § 7341, necessarily be precluded. *See Ginther, supra* and *Hade, supra.* Additionally, I cannot agree that the order at issue instantly is collateral to the main cause of action. A brief review of the procedural posture of this case is illustrative.

In his Motion to Compel Arbitration, Randall Shears, Jr. (Shears) noted that he demanded arbitration under the rules of the American Arbitration Association on March 4, 1991. (Motion to Compel Arbitration, R.R. at 117a, *citing* Exhibit 2, R.R. at 123a.) By letter dated April 19, 1991, USAA denied the claim and refused to submit to arbitration. (R.R. at 125a–126a.) According to the motion to compel, the parties then agreed to submit to a declaratory judgment on stipulated facts. (R.R. at 118a.) This averment was neither admitted nor denied by USAA. (*See* Answer to Motion to Compel Arbitration, R.R. at 134a.) USAA then filed a complaint in declaratory judgment on or about November 4, 1992, to which Shears filed an answer. Both parties then filed motions for judgment on the pleadings. By opinion and order dated January 28, 1994, Judge Louik denied USAA's motion for judgment on the pleadings, finding that Shears had a cause of action in tort against USAA for uninsured motorist benefits. Judge Louik did not, how-

ever, rule on Shears' motion, which is still pending before that court. USAA neither attempted to file an appeal, nor followed the prerequisites for seeking permission to appeal pursuant to Rule 1311. Over nine months later, on or about September 12, 1994, Shears filed his motion to compel arbitration in which he stated that, "based on the aforesaid order [Judge Louik's order], [Shears] hereby respectfully requests the Court to grant an Order compelling this matter to arbitration via the American Arbitration Association per [Shears'] demand on March 4, 1991." (R.R. at 118a.) Thus, the motion to compel arbitration was merely the next procedural step necessary to implement Judge Louik's opinion and order vis-a-vis the declaratory judgment action. Clearly, therefore, the motion to compel arbitration cannot be considered collateral to the declaratory judgment action, as the majority holds.

Finding Judge Horgos' order compelling arbitration to be interlocutory, and finding that USAA has failed to take advantage of *any* opportunity to seek permission to appeal from an interlocutory order, I would quash the instant appeal. I must, therefore, respectfully dissent.

---

4. I recognize that the Commonwealth Court was viewing the collateral order doctrine from the perspective of the federal courts, which do not view that doctrine as an exception to the final order rule; instead, federal courts, in the interest of achieving a healthy legal system, view the doctrine as a rule that allows a small class of decisions that do not terminate litigation to be treated as final. *Watson, supra,* 665 A.2d at 1317, *citing Digital Equipment Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994).